**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**AKRAMKHON I. KHAMRAEV,**

> **Petitioner,**

**vs.**                                                    **Case No. 4:26cv171-MW-MAF**

**LIBERTY COUNTY SHERIFF,**
**SAMUEL OLSON,**
**TODD M. LYONS,**
**MARKWAYNE MULLIN,**
**and TODD BLANCHE,**

> **Respondents.**
> _____/

## <u>ORDER GRANTING HABEAS PETITION</u>

Petitioner, represented by counsel, filed a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2241, claiming that his current detention without a bond

hearing is unlawful, violates the Immigration and Nationality Act, the Due Process

Clause and the Suspension Clause of the United States Constitution.  ECF No. 1 at

18-21.  Primarily the petition seeks to compel his immediate release from custody.

*Id.* at 21.  In the alternative, Petitioner requests that Respondents be required to

provide him with an individualized bond hearing before an immigration judge.  *Id.*

at 23.   Petitioner paid the $5.00 filing fee.  ECF No. 1.

Petitioner, like hundreds if not thousands of other immigrants to this country, has been held for a significant period of time in detention without the provision of a bond hearing. These immigrants have filed petitions[1] for writs of habeas corpus seeking freedom from mandatory detention. In the words of Emma Lazarus as penned in "The New Colossus," the "huddled masses" are "yearning to breathe free." Petitioner should either be given his freedom or, in the alternative, provided an individualized bond hearing. The petition for writ of habeas corpus filed under § 2241 is granted.

Although the response filed by Respondent on May 12, 2026, ECF No. 10, argues that the petition should be denied for failure to exhaust administrative remedies, it also acknowledges the recent published decision from the Eleventh Circuit Court of Appeal, Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, No. 25-14065, --- F.4th ---, 2026 WL 1243395, at *1 (11th Cir. May 6, 2026). In that opinion, the Court rejected the Government's argument in these types of habeas cases that non-admitted aliens who were encountered inside the United States

---

[1] Judicial notice is taken that in the two weeks since the Eleventh Circuit entered its decision in Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami, No. 25-14065, --- F.4th ---, 2026 WL 1243395, at *1 (11th Cir. May 6, 2026) (concluding that "no-bond detention generally applies to arriving aliens seeking lawful entry to the country, and not to aliens who are simply present here"), nearly 200 opinions have been entered which cite to that case. That does not account for the hundreds of opinions entered prior to May 6, 2026.

should be deemed to be "seeking admission."   2026 WL 1243395, at *1.

Respondent concedes that the decision "appears to control resolution of this case."

ECF No. 10 at 11.  Further, Respondent states that under Hernandez Alvarez,

Petitioner "appears to be bond-eligible and entitled to a bond hearing before an

immigration judge." *Id.* at 12.  Nevertheless, Respondent maintains the position

that "Petitioner's continued detention during the pendency of his removal

proceedings is mandatory § 1235(b)(2)(A) under the better reasoning as set forth in

Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026), Buenrostro-Mendez v. Bondi, 166

F.4th 494 (5th Cir. 2026), and Judge Lagoa's dissenting opinion in Hernandez

Alvarez.  *Id.*

In response, Petitioner filed a notice of new authority, ECF No. 9, citing to

Hernandez Alvarez, and a reply, ECF No. 15.  Petitioner contends that case "is

binding precedent in this Circuit, its reasoning applies directly to Petitioner's facts,

and the Government's attempt to preserve a contrary position by invoking out-of-

circuit decisions, two non-binding district-court rulings, and a dissenting opinion[2]

cannot displace controlling Eleventh Circuit authority."  ECF No. 15 at 1.

---

[2]  This Court notes that "[w]hatever appeal the dissenting opinion's view may have as a matter of political theory, it is not the law."  City of Mobile, Ala. v. Bolden, 446 U.S. 55, 75, 100 S. Ct. 1490, 1504, 64 L. Ed. 2d 47 (1980).

**The § 2241 Petition**

Petitioner is a native and citizen of Uzbekistan who fled to the United States following persecution and threats. *Id.* at 1, 6. Petitioner entered the United States near San Ysidro, California, in September 2023 without inspection. *Id.* at 1. He was apprehended, issued a Notice to Appear[3] on September 27, 2023, and was released on an Order of Recognizance. *Id.* at 1-2. It is worth noting that the Notice to Appear includes a box for immigration officials to categorize an alien as "an arriving alien," as "an alien present in the United States who has not been admitted or paroled," or as one who has "been admitted to the United States . . . ." ECF No. 1-2 at 1. In this case, Petitioner was listed not as an arriving alien but one who was "present in the United States." *Id.* This Court finds that the charging choice (Notice to Appear) matters. Furthermore, Petitioner asserts that the Order of Release on Recognizance was entered "pursuant to INA § 236(a), 8 U.S.C. § 1226(a)" and is a "formal, affirmative governmental determination that his custody fell under the discretionary detention framework of § 1226(a)." ECF No. 1 at 2; *see also* ECF No. 1-3 at 1. After his release, Petitioner took up residence in

---

[3] The Notice to Appear required Petitioner to appear before an immigration judge on November 21, 2023. ECF No. 1-2 at 1. It is unknown what happened at that meeting.

Chicago, Illinois. ECF No. 1 at 2. Petitioner has "no criminal history of any kind in the United States" and complied with all conditions of release. *Id.* at 3.

Petitioner is "a practicing Muslim who identifies with Tablighi Jamaat, a peaceful religious organization that is banned in Uzbekistan." *Id.* at 6. He experienced persecution and ongoing threats in Uzbekistan "on account of his religious beliefs and practices." *Id.* Fearing for his safety, he fled Uzbekistan and sought protection in the United States. *Id.* He applied for asylum and withholding of removal on April 24, 2024. *Id.* at 7. On November 7, 2024, Petitioner was issued "an Employment Authorization Document valid through November 6, 2029, under Category C08 (pending asylum applicant)." *Id.* "Petitioner maintained lawful employment as a delivery worker." *Id.*

He was taken into ICE custody earlier this year[4] and is detained at the Liberty County Jail. *Id.* At no time has he been "provided with an individualized bond hearing before an immigration judge." *Id.* The petition asserts that the Government is treating him as if subject to mandatory detention under 8 U.S.C. § 1225(b)(2). *Id.*

---

[4] According to Respondent, Petitioner was taken into custody on March 29, 2026. ECF No. 10 at 2.

**The Government's Response**

Respondent explains that on March 29, 2026, Petitioner was "encountered by a Florida Agricultural Law Enforcement Officer at I-75 inspection station on I-75 in Hamilton County, FL."  ECF No. 10 at 2; *see also* Ex. 3 at 2 (ECF No. 10-3).  He allegedly falsely claimed to be hauling furniture but a cargo inspection revealed he was "hauling produce for Amazon."  ECF No. 10 at 2.  An agent with ICE advised that Petition "did not have legal status in the United States and" should he detained.  *Id.*  He was arrested for driving without a valid license and charged with "being an unauthorized alien/undocumented immigrant driving on an invalid out-of-state license."  *Id.*

Respondent argues that Petitioner "is an alien present in the United State who has not been admitted, thus making him an applicant for admission."  ECF No. 10 at 12 (citing to 8 U.S.C. § 1225(a)(1).  Thus, it is argued that he is "subject to mandatory detention pursuant to [8] U.S.C. § 1225(b)(2)" and is "an 'arriving alien' who is 'seeking admission' . . . ."  *Id.*

**Analysis**

Respondents' argument concerning exhaustion is rejected.  It is premised on the assertion that Petitioner is subject to mandatory detention under § 1225(b).

Case No. 4:26cv171-MW-MAF

However, as explained more fully below, the argument concerning the basis for detention should be rejected pursuant to the authority of <u>Hernandez Alveraz</u>. Further, this Court agrees with other Florida district courts which have held that "exhaustion is excused because it would be futile."  <u>Ramos v. Warden</u>, No. 2:26-CV-32-JES-DNF, 2026 WL 195200, at *1 (M.D. Fla. Jan. 26, 2026); <u>Mejia v. Lyons</u>, No. 0:26-60258-CIV, 2026 WL 914753, at *2 (S.D. Fla. Apr. 3, 2026) ("exhaustion is not required where no genuine opportunity for adequate relief exists...or an administrative appeal would be futile[.]") (citations omitted); <u>Cetino v. Hardin</u>, No. 2:25-CV-1037-JES-DNF, 2025 WL 3558138, at *2 (M.D. Fla. Dec. 12, 2025) ("requiring Cetino to make an administrative request for a bond hearing would be futile because the result is predetermined").  Petitioner cannot be required to exhaust a non-existent and futile remedy.

**Statutory Basis for Detention**

For nearly thirty years, non-admitted aliens who were encountered in the interior of the United States as opposed to being intercepted at the border have been "eligible for bond while they go through immigration proceedings." <u>Hernandez Alvarez</u>, 2026 WL 1243395, at *1.  In 2025, the Department of Homeland Security ("DHS") changed its position and now argues that such "aliens

must be detained without bond under 8 U.S.C. § 1225(b)(2)(A)."  2026 WL

1243395, at \*1.  That statute provides that "[s]ubject to subparagraphs (B) and (C),

in the case of an alien who is an applicant for admission, if the examining

immigration officer determines that an alien seeking admission is not clearly and

beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding

under section 1229a of this title."  8 U.S.C. § 1225(b)(2)(A).

The Eleventh Circuit has now rejected Respondents' argument in <u>Hernandez</u>

<u>Alvarez</u>.  There, two petitioners "were detained without the possibility of a bond

hearing pursuant to § 1225(b)(2)(A)," which is the same scenario that exists in this

case.  2026 WL 1243395, at \*1.  The Eleventh Circuit was "unpersuaded by the

Government's re-interpretation of § 1225(b)(2)(A)" and explained:

> That provision limits no-bond detention to applicants for admission
> who are "seeking admission," and on the facts of this case, neither
> Petitioner was seeking lawful entry into the United States after
> inspection by an immigration officer when he was arrested, nor was
> either Petitioner taking any cognizable step to obtain the rights and
> privileges of lawful entry. In fact, neither Petitioner was pursuing any
> object, let alone "lawful entry," when he was detained following a
> traffic stop.

<u>Hernandez Alvarez</u>, 2026 WL 1243395, at \*1.  The Court concluded "that no-bond

detention generally applies to arriving aliens seeking lawful entry to the country,

and not to aliens who are simply present here." 2026 WL 1243395, at *1. The Court said "the Government ha[d] conflated the passive condition of 'presence' with actively 'seeking' something specific, in contravention of the actual words and definitions Congress chose." 2026 WL 1243395, at *8. That decision controls this case even though the mandate has not yet issued.[5]

Here, Petitioner has been present in the United States for over two and a half years. He was "not applying for entry in any literal sense when" detained by law enforcement, and he was not then "taking any cognizable step to obtain the rights and privileges of lawful entry." 2026 WL 1243395, at *8. Petitioner was working at a job, driving a truck, and was merely "present in the country." *Id.* Where Petitioner was encountered matters. He was not at a port of entry or encountered at the border. Under the controlling authority of <u>Hernandez Alvarez</u>, Petitioner's

---

[5] An Order was entered on May 13, 2025, stating that a judge of the "Court withholds issuance of the mandate" in <u>Hernandez Alvarez</u>. ECF No. 76 of case 25-14065. Even so, "the Eleventh Circuit's published opinion has immediate precedential effect." <u>Solange Mendes v. Ripa</u>, No. 3:26-CV-118-JEP-PDB, 2026 WL 1396160, at *1, n.4 (M.D. Fla. May 19, 2026) (citing <u>Martin v. Singletary</u>, 965 F.2d 944, 945 n.1 (11th Cir. 1992) (noting that a published opinion "is the law in this circuit unless and until it is reversed, overruled, vacated, or otherwise modified by the Supreme Court of the United States or by [the Eleventh Circuit] sitting en banc," and that a stay of the mandate "in no way affects the duty of...the courts in this circuit to apply now the precedent established by" the published opinion "as binding authority"). Also lending support is 11th Cir. IOP—Cir. R. 36.2 which addresses the effect of the mandate and states, "Under the law of this circuit, published opinions are binding precedent. The issuance or non-issuance of the mandate does not affect this result." 2026 WL 1396160, at *1, n.4.

detention is governed by 8 U.S.C. § 1226[6] and not the mandatory detention of § 1225.  The petition for writ of habeas corpus filed under § 2241 is granted.  Petitioner should either be given his freedom or, in the alternative, provided an individualized bond hearing pursuant to 8 U.S.C. § 1226(a).[7]  Doing so complies with the holding of Hernandez Alvarez and is consistent with three other circuit courts.  Barbosa da Cunha v. Freden, No. 25-3141-PR, 2026 WL 1146044, at *23

---

[6] The statute provides: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
    (1) may continue to detain the arrested alien; and
    (2) may release the alien on—
        (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
        (B) conditional parole; but
    (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization."
8 U.S.C. § 1226(a).

[7] The Supreme Court has also opined that § 1226(a) "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings . . . ." Jennings v. Rodriguez, 583 U.S. 281, 289, 138 S.Ct. 830, 200 L.Ed.2d 122 (2018) (quoted in Pereira v. Bondi, No. 25-CV-26037-GAYLES, 2026 WL 709758, at *3 (S.D. Fla. Mar. 13, 2026)) (emphasis added). Under § 1226(a), an alien may either be "detained pending a decision on whether the alien is to be removed from the United States" or the alien may be released on "bond of at least $1,500 . . . ." 8 U.S.C. § 1226(a)(2). Section 1226(a) establishes a discretionary framework. Moreover, the Supreme Court has recognized that "aliens detained under § 1226(a) receive bond hearings at the outset of detention." Jennings, 583 U.S. at 306, 138 S. Ct. at 847 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). Although the Government has insisted that Jennings' "description of the INA is merely dicta," the Eleventh Circuit has noted, "there is dicta and then there is dicta, and then there is Supreme Court dicta." Schwab v. Crosby, 451 F.3d 1308, 1325 (11th Cir. 2006) (quoted in Hernandez Alvarez, 2026 WL 1243395, at *16).

Case No. 4:26cv171-MW-MAF

(2d Cir. Apr. 28, 2026) (concluding that Petitioner's detention is governed by Section 1226(a), not Section 1225(b)(2)(A)"); <u>Castanon-Nava v. U.S. Dep't of Homeland Sec.</u>, No. 25-3050, 2026 WL 1223250, at *13 (7th Cir. May 5, 2026) (holding that "§ 1225(b)(2)(A)'s text leads to the conclusion that the provision applies not to all 'applicants for admission' en masse but only to those 'applicants for admission' who are actively 'seeking' lawful admission"); <u>Lopez-Campos v. Raycraft</u>, No. 25-1965, 2026 WL 1283891, at *3 (6th Cir. May 11, 2026) (joining the Second and Eleventh Circuits).

Notably, the Eleventh Circuit's conclusion has been rejected by two circuits. <u>Avila v. Bondi</u>, 170 F.4th 1128, 1138 (8th Cir. 2026) (finding "the district court erred in holding that the Government could not detain Avila without bond under § 1225(b)(2)(A) and in granting habeas relief on that basis"); <u>Buenrostro-Mendez v. Bondi</u>, 166 F.4th 494, 506 (5th Cir. 2026) (holding that § 1225 applies to aliens who entered the United States in 2009 without admission").  Yet even if this Court disagreed with the holding in <u>Hernandez Alvarez</u>, it must still be followed.  *See* <u>Eduardo Diaz Garcia v. Warden, Glades Cnty. Det. Center</u>, No. 2:26-CV-771-KCD-NPM, 2026 WL 1390988, at *1 (M.D. Fla. May 19, 2026) (vacating a prior judgment which held that petitioner was "subject to mandatory detention without a

bond hearing," re-opining the case, and granting the petition); Gonzalez Torres v. Ripa, No. 26-61453-CIV, 2026 WL 1379153, at *1 (S.D. Fla. May 18, 2026) (stating that "[d]espite the superior, well thought out plain meaning analysis of the dissenting judge in Hernandez Alvarez v. Warden, Federal Detention Center, Miami, —— F.4th ——, ——, 2026 WL 1243395 (11th Cir. May 6, 2026) (Lagoa, J.), this Court is duty bound to follow the majority opinion authored by its parent court").   Accordingly, the petition, ECF No. 1, is granted.

Accordingly, it is **ORDERED:**

1.  The petition for writ of habeas corpus, ECF No. 1, is **GRANTED**.

2.  The Clerk shall enter judgment stating, "Respondents must either provide Petitioner with an individualized bond hearing pursuant to § 1226(a) before an Immigration Judge within seven (7) days or, in the alternative, they must release Petitioner."

3.  The Clerk shall close the file.

**SO ORDERED on May 21, 2026.**

 s/  Mark E. Walker
**United States District Judge**